# STATE OF MICHIGAN

# COURT OF APPEALS

UNPUBLISHED
January 2, 2018

*In re* CROOKS/JONES, Minors.

No. 337484
Wayne Circuit Court
Family Division
LC No. 16-523341-NA

*In re* M. L. CROOKS, Minor.

No. 337485
Wayne Circuit Court
Family Division
LC No. 16-523341-NA

Before: SHAPIRO, P.J., and HOEKSTRA and M. J. KELLY, JJ.

PER CURIAM.

In Docket No. 337484, respondent mother appeals as of right the trial court's orders terminating her parental rights to the minor children, KNJ and MLC, pursuant to MCL 712A.19b(3)(b)(*ii*) (failure to prevent sexual abuse) and MCL 712A.19b(3)(j) (reasonable likelihood that the child will be harmed if returned to the parent). In Docket No. 337485, respondent father appeals as of right the order terminating his parental rights to the minor child, MLC, pursuant to MCL 712A.19b(3)(b)(*i*) (the parent's act caused the sexual abuse), MCL 712A.19b(3)(j), and MCL 712A.19b(k)(*ii*) (abuse of a sibling of the child involving penetration or attempted penetration).[1] Respondents argue that the trial court clearly erred in finding that statutory grounds for termination of their respective parental rights were established by clear and convincing evidence. We affirm.

We begin by noting the procedural background of this appeal. After this appeal was initially briefed, respondents filed motions for adjournment and remand based on the fact that respondent father had been acquitted of the criminal charges arising out of the allegations of

---

[1] The trial court's order cited MCL 712A.19b(3)(k)(*i*), but the trial court's reasoning on the record indicates that the trial court was relying on MCL 712A.19b(3)(k)(*ii*).

-1-

sexual abuse relevant to this child proceedings and order of termination. We denied the motions to adjourn, but after the case was submitted, we issued an order in docket # 337484 which reads:

> The Court further orders that the motion to remand is GRANTED, and this matter is REMANDED TO THE Wayne Circuit Family Court for the limited purpose of allowing the parties to make an offer of proof on the question whether respondent father's acquittal . . . necessitates a reopening of the proofs in respondent mother's termination case. Respondent mother may present an offer of proof describing the evidence adduced at respondent father's criminal trial which believes, if known by the family court, would have resulted in a different outcome in her dispositional hearing. Petitioner may present an offer of proof regarding the evidence adduced at the criminal trial supporting the termination of respondent mother's parental rights. . . . If the family court vacates March 3, 2017 order, then the court shall retain jurisdiction over the children. The family court shall make findings of facts and its determination on the record, either in writing or from the bench. . . .

An order to the same effect was issued in docket #337485 as to respondent-father.

On remand, respondent mother submitted a brief summarizing the evidence presented at the criminal trial. The trial court, based upon the offer of proof in that brief, stated that the proffered evidence would not have affected his decision and declined to accept the criminal trial transcript into evidence. The decision not to accept the transcript was not error; the court received and considered an offer of proof as we directed. The offer of proof had several aspects. First, that at the criminal trial, additional inconsistencies concerning the accusations was revealed. Second, that two character witnesses testified. Third, that respondent mother testified that on two occasions, she heard the two complainants plotting to falsely accuse respondent father. Fourth, that a neighbor testified that on the day some of the abuse allegedly occurred at the family's home, respondents and their children were at the neighbor's home celebrating the fourth of July and so, were not at home.

The trial court concluded that none of the materials in the offer of proof would have led it to a different decision. The trial court's conclusion was not error. The additional inconsistencies were relatively minor. The testimony of the character witnesses as proffered was also not compelling and the neighbor's testimony addressed only one of many alleged assaults. The testimony given by respondent father's mother was inconsistent with her testimony in this case and the trial court, having considered this witness's credibility before the remand, was free to reject it. Finally, the trial court heard testimony from respondents and was able to judge their credibility, something the criminal jury was unable to do.

Accordingly, we review this matter based upon the actual proofs submitted during the proceedings prior to the order of termination and for the reasons discussed below and based on that record, we affirm.[2]

"Termination of parental rights is appropriate when the [Department of Health and Human Services (DHHS)] proves one or more grounds for termination by clear and convincing evidence." *In re Frey*, 297 Mich App 242, 244; 824 NW2d 569 (2012). "If a statutory ground for termination is established and the trial court finds 'that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made.' " *In re Ellis*, 294 Mich App 30, 32-33; 817 NW2d 111 (2011) (citation omitted).

The first ground for termination at issue here is MCL 712A.19b(3)(b), which provides for termination of parental rights if the court finds by clear and convincing evidence that:

> (b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

> (*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

> (*ii*) The parent who had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home.

"Evidence of how a parent treats one child is evidence of how he or she may treat the other children." *In re Hudson*, 294 Mich App 261, 266; 817 NW2d 115 (2011).

The trial court did not clearly err in terminating respondent father's parental rights to MLC under MCL 712A.19b(3)(b)(*i*) and in terminating respondent mother's parental rights to MLC and KNJ pursuant to MCL 712A.19b(3)(b)(*ii*), where the trial court found that respondent father sexually abused KNJ and that respondent mother failed to protect her after the abuse was

---

[2] This Court reviews for clear error a trial court's decision that a ground for termination has been proven by clear and convincing evidence. MCR 3.977(K); *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). "A trial court's decision is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re Olive/Metts Minors*, 297 Mich App 35, 41; 823 NW2d 144 (2012) (quotation marks and citation omitted). "Due regard is given to the trial court's special opportunity to judge the credibility of witnesses." *In re LE*, 278 Mich App 1, 18; 747 NW2d 883 (2008); MCR 2.613(C). The trial court "has the advantage of being able to consider the demeanor of the witnesses in determining how much weight and credibility to accord their testimony." *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

disclosed to her. KNJ testified that respondent father[3] touched her on more than 10 occasions over a three-month period in 2015. Specifically, she testified that respondent father touched her chest, private area and butt, put his hand down her pants, and inserted his finger into her vagina. KNJ disclosed the ongoing abuse to respondent mother, including basic information on the body parts respondent father touched, but respondent mother responded by saying that she did not believe KNJ. Respondent mother did not kick respondent father out of the house or have KNJ leave the house, neither did respondent mother take KNJ for a physical examination or therapy. Instead, respondent mother and respondent father merely agreed that he would keep his distance from the children and avoid being alone with them. Respondent mother told KNJ to "stay in the back[]" when she was not home, and that KNJ should stay in her bedroom after dinner and not be alone in any room with respondent father. Even after KNJ made her disclosure to respondent mother, respondent father again touched KNJ sexually several times.

This testimony establishes that respondent father sexually abused KNJ. The evidence also indicates that respondent mother had the opportunity to prevent the sexual abuse of KNJ but failed to do so. There is a reasonable likelihood that KNJ and MLC would suffer sexual abuse in the foreseeable future if placed in respondents' home. Respondent father's treatment of KNJ is evidence of how he may treat MLC. *In re Hudson*, 294 Mich App at 266. Respondent mother's failure to take adequate protective measures after learning of respondent father's abuse of KNJ, as well as her continued loyalty to respondent father by marrying him after KNJ disclosed the abuse and continuing to live with him throughout the termination proceedings, strongly indicates that she will fail to protect the children if they are returned to her care. *In re Gonzales/Martinez*, 310 Mich App 426, 432; 871 NW2d 868 (2015) (affirming termination under MCL 712A.19b(3)(b)(*ii*) where "[t]he evidence established that respondent placed her desire to be with her boyfriend—despite his abuse—over the needs of her children, and there was evidence that she would likely continue to place her personal desires over her children's welfare.").

Respondents' arguments are essentially directed at challenging the trial court's credibility determinations. They contend that respondent father denied that he sexually abused KNJ and that respondent mother claimed that KNJ disclosed that respondent father had brushed his hand along her chest outside her clothes. However, the trial court found KNJ to be a credible witness. The court believed that the abuse occurred as KNJ claimed, and found that KNJ's disclosure of the sexual abuse was more than respondent mother had revealed. The fact that KNJ continued to interact with respondent father, such as playing chess with him and asking for rides to volleyball games, merely illustrates the inadequacy of respondent mother's protective measures. In fact, respondent mother left it to KNJ to self-monitor her behavior in lieu of reporting the allegations to the authorities or taking her for an examination or therapy. Given the trial court's special opportunity to judge the credibility of witnesses, *In re LE*, 278 Mich App 1, 18; 747 NW2d 883 (2008), we can discern no basis to conclude that the trial court's findings were clearly erroneous.

---

[3] Respondent father was KNJ's step-father. She had no legal father and her putative father's whereabouts was unknown. Respondents are the biological parents of MLC.

Further, MCL 712A.19b(3)(j) requires a court to find by clear and convincing evidence that "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." Harm includes both physical harm and emotional harm. *In re Hudson*, 294 Mich App at 268. We hold that the evidence discussed above supports termination under MCL 712A.19b(3)(j) of respondent father's parental rights to MLC and respondent mother's parental rights to KNJ and MLC. Respondent father's sexual abuse of KNJ, respondent mother's failure to protect KNJ from further abuse, and her continued loyalty to respondent father by marrying him after learning of the abuse and continuing to live with him throughout these proceedings, reflect a reasonable likelihood of harm if the children are returned to the parents.

Termination of respondent father's parental rights to MLC was also proper under MCL 712A.19b(3)(k)(*ii*), which provides for termination where "[t]he parent abused the child or a sibling of the child and the abuse included . . . [c]riminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate." The testimony credited by the trial court established that respondent father sexually abused KNJ, who is MLC's sibling. Therefore, the trial court's decision under this statutory ground was not erroneous.

Respondents also argue that petitioner did not make reasonable efforts to reunify them with the children. We disagree. "Generally, reasonable efforts must be made to reunite the parent and children unless certain aggravating circumstances exist." *In re Moss*, 301 Mich App 76, 90-91; 836 NW2d 182 (2013); MCL 712A.19a(2). "However, the petitioner 'is not required to provide reunification services when termination of parental rights is the agency's goal.' " *Id.* (citation omitted). Further MCR 3.977(E) provides that termination is required at the initial disposition hearing and additional reunification efforts shall not be ordered if

> (1) the original, or amended, petition contains a request for termination;
>
> (2) at the trial or plea proceedings, the trier of facts finds by a preponderance of the evidence that one or more of the grounds for assumption of jurisdiction over the child under MCL 712A.2b have been established;
>
> (3) at the initial disposition hearing, the court finds on the basis of clear and convincing legally admissible evidence that had been introduced at the trial or plea proceedings, or that is introduced at the dispositional hearing, that one or more facts alleged in the petition:
>
> (a) are true, and
>
> (b) establish grounds for termination or parental rights under MCL 712A.19b(3)(a), (b), (d), (e), (f), (g), (h), (i), (j), (k), (*l*), (m), or (n);
>
> (4) termination of parental rights is in the child's best interests.

In the present case, the initial petition sought termination of respondents' parental rights based on respondent father's sexual abuse of KNJ and respondent mother's failure to protect KNJ after she disclosed the abuse. MCL 722.638(1)(a)(*ii*) and (2) (requiring petitioner to seek termination of parental rights where it determined that a parent sexually abused the children or failed to

-5-

protect the children from the sexual abuse). The trial court found, by a preponderance of the evidence, that there were grounds to assume jurisdiction. At the initial dispositional hearing, the court found that one or more facts alleged in the petition were true, and at trial, the court found by clear and convincing evidence that at least one of the grounds for termination had been established. Further, the trial court found that termination of respondents' parental rights was in the children's best interests. Because all the requirements of MCR 3.977(E) were met, reunification efforts were not required.[4]

Respondent mother contends that petitioner failed to investigate possible relative placements for the children. Specifically, respondent mother argues that petitioner did not investigate the possibility of placing the children with respondent father's mother at respondent mother's house. According to respondent mother, although petitioner previously found that the home was infested with roaches and removed the children from the home, petitioner did not assess the home again after the filing of the petition. We disagree.

The record indicates that petitioner investigated relative placement. Child Protective Services investigator, Gretchen Heinrich, testified that she looked into possible relative placements for the children. She stated that the only relative that passed the background check was respondent father's cousin. KNJ was initially placed with respondent father's cousin in June 2016, but she later indicated that she was unable to keep KNJ in her home. Heinrich testified that respondent father's mother was offered relative placement, she agreed and elected to remain in respondent mother's house with the children while respondents left. The children were placed with her in late June of 2016; however, the children were removed from the home when during a home visit, foster-care worker Erica Shelby discovered that the home was infested with roaches.

During a November 18, 2016 hearing, respondents raised the issue of relative placement. Shelby indicated that respondent father wanted his mother to be considered for placement again.

---

[4] Nonetheless, we note that during the preliminary hearing, the trial court ordered petitioner to make reasonable efforts to reunify respondent mother with the children, but declined to order that reasonable efforts be made to reunify respondent father with MLC. The reasonable efforts for respondent mother consisted of supervised visitation with the children pending trial. Respondent mother was ordered not to discuss the case with the children during visitation, but she violated the order by discussing the case with the children and by trying to manipulate them during visitation, including by: (1) effectively urging KNJ to recant the sexual abuse allegations and tell "the truth" so that the family could reunite and (2) telling MLC to disobey her foster parents and to say she wanted to go home, and telling her that she would be coming home in nine days when the trial was held. Respondent mother's improper statements to the children during visitation caused KNJ to cry and become withdrawn and distraught after visitation, and it negatively affected MLC's behavior after visitation. This became such a problem that the trial court ordered the visitations to occur in a therapeutic setting, i.e., under the monitoring of therapists. Reunification services were provided for respondent, but she failed to comply with the terms set by the trial court.

A worker from Shelby's office went to respondent father's mother's home and learned that respondents were residing in the home, even though they had previously indicated that they had moved out of that home. The children's attorney noted that an assessment of the home could not be done with respondents living there. The trial court agreed that an assessment could not be done while respondents were living in the home, and ordered an assessment once respondents moved out of the home. The home was not assessed again because respondents continued to live in the home. Therefore, we are not persuaded by respondent mother's argument that the issue of relative placement was not properly investigated.

Respondent mother also argues that the trial court clearly erred in finding that termination of her parental rights was in the children's best interests. We disagree.[5]

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id*. at 41-42 (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014).

Although KNJ expressed that she still loves respondent mother, she indicated that she wanted respondent mother's parental rights to be terminated because respondent mother did not do what was best for her. Respondent mother's failure to protect KNJ from further sexual abuse after it was disclosed to her, and her continued loyalty to respondent father shows that she cannot put the children's interests ahead of her own. KNJ faces a serious risk of further abuse if returned to respondent mother's care. Further, although the trial court found that MLC was bonded to respondents, it correctly stated that MLC faced the risk of sexual abuse when she became older given that respondent father had sexually abused another biological daughter and respondent mother's failure to protect KNJ. The existence of a bond does not preclude a determination that termination is in the children's best interest. *In re LE*, 278 Mich App at 29-30. Additionally, respondent mother's behavior during visitation, in which she improperly discussed the case and attempted to manipulate the children, including by urging KNJ to recant her allegations, causing emotional and behavioral problems for both children, further supports the position that she does not appreciate the consequences of the sexual assault committed on KNJ. Moreover, MLC is doing well in foster care and will likely be adopted given her young

---

[5] The trial court's best-interest determination is reviewed for clear error. *In re Olive/Metts Minors*, 297 Mich App at 40. "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App at 90.

age and the interest expressed by her foster parents. Although KNJ is older and is less likely to be adopted, KNJ's testimony reflected that she is very intelligent and understood the situation.

Accordingly, we hold that the trial court did not clearly err in finding that termination of respondent mother's parental rights was in the best interests of the children.

The termination of parental rights ordered by the trial court in each of these matters is affirmed.

/s/ Douglas B. Shapiro
/s/ Joel P. Hoekstra
/s/ Michael J. Kelly